SIGNED this 13th day of October, 2011.

_____
JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| IN RE: | BANKR. CASE NO. |
|---|---|
| LAURA A. MORRIS | 11-50150 |
| *DEBTOR* | CHAPTER 13 |

### MEMORANDUM OF OPINION ON PLAN CONFIRMATION

    Laura A. Morris (the "Debtor") filed this Chapter 13 case on January 11, 2011. On September 23, 2011 the court held a hearing (the "Confirmation Hearing") to consider the confirmation of the "Debtor's Chapter 13 Plan – First Amended," filed August 17, 2011 [Docket No. 71]. On October 11, 2011, the Debtor filed her "Debtor's Chapter 13 Plan – Second Amended" (the "Plan") [Docket No. 94] which was the result of an agreement with the Chapter 13 Trustee at the Confirmation Hearing. The Debtor is a self employed real estate broker. She is single. The Debtor claimed the Texas exemptions and the plan states that the value of her non-exempt assets is $3,882.53. The Plan states that her net monthly income is $5,742.75 and her monthly expenses are $5,511.80 leaving an excess of $230.95. Her plan proposes to pay $231.00

1

per month for 60 months (or less if all creditors are paid in full as described below). She has cancelled a vehicle lease and surrendered the vehicle to Toyota Motor Credit. The Plan provides that she will pay $414.05 per month direct to Ford Motor Credit on another vehicle.[1] Neither the Chapter 13 Trustee nor the objecting creditor challenged these recitations in the Plan.

The plan contains the following supplemental provisions:

"(1). The Debtor shall sell the real property, together with all improvements thereon, located at 6500 US Hwy 281, Spring Branch, Texas 78070 (the "Property"). *By agreement with the Chapter 13 Trustee reached at the confirmation hearing held on September 23, 2011, Debtor has agreed to sell the property within 24 months from the date of confirmation*[2]; (2). Pursuant to 11 U.S.C. §1322(b)(3), any default under the notes secured by valid liens upon the Property shall be cured, including any acceleration of maturity provided by the notes, by paying the full amount due and owing to Security State Bank or its assignee(s) (Bulverde Security, LLC) from the sales proceeds realized from the sale of the Property, during the term of the Debtor's Chapter 13 Plan; (3). Notwithstanding any contrary provisions set forth in the notes secured by valid liens upon the Property, post-petition interest shall accrue and be paid on the allowed amount of the claim(s) of Security State Bank or its assignee(s) (Bulverde Security, LLC) using the current the Wall Street Journal Prime Rate (3.25%) plus 2% (i.e. at the rate of 5.25% per annum), until paid in full during the term of the Debtor's Chapter 13 Plan; (4). Attorney's Fees, costs of collection, or other amounts alleged to be due and owing to Security State Bank or its assignee(s) (Bulverde Security, LLC) shall be paid in the amount(s) allowed by the Bankruptcy Court from the sales proceeds realized from the sale of the Property, during the term of the Debtor's Chapter 13 Plan; (5). Notwithstanding the foregoing provisions, all sums due and owing to the Comal County Tax Assessor/Collector at time of the closing of the sale of the Property shall be paid in full prior to the payment of the claim of Security State Bank or its assignee(s) (Bulverde Security, LLC); (6). After payment of the county ad valorem taxes and mortgage indebtedness, the remaining sales proceeds will be used to pay 100% of the allowed general unsecured claims in the Debtor's case; (7). Liabilities which are joint with the Debtor's former spouse, Jeffrey S. Cumming, shall be paid out of the proceeds from the sale of the homestead in accordance with the parties' Final Decree of Divorce; (8). The claim of Barton and Nancy Dailey shall [be] paid in full at closing out of Joint Owner Jeffrey S. Cumming's share of the net proceeds from the sale of the Property as provided by the Stipulation filed herein on July 21, 2011 (Docket No. 65)."[3]

An objection to confirmation was filed by Bulverde Security, LLC ("Bulverde") [Docket No. 85]. Apparently any concerns the Chapter 13 Trustee had concerning the Plan were resolved by the in court announcement that the Debtor would have 2 years, rather than the 5 years, to sell the Property.

---

[1] Payments made directly to a creditor by the Debtor are often referred to as being paid "outside of the plan."
[2] The First Amended Plan had provided that the Property would be sold during the five year term of the plan.
[3] The "Property" consists of two parcels, a 6.165 acre tract and an 11.381 acre tract, or a total of 17.556 acres out of the 27.481 acre tract. A plat of the parcels is attached to Exhibit D-1. The decree of divorce described below refers to the 11.381 acre tract as 6450 US Highway 281 N and to the 6.165 acre tract at 6500 US Highway 281 N.

The thrust of the Plan is the Debtor's belief that the Property can be sold for an amount sufficient to pay in full her debts and a debt of her former husband. The concern which the court must address is whether there is sufficient equity in the Property to provide adequate protection for the interests of creditors holding liens on the Property.

Background: On December 13, 2000 Jeffrey S. Cumming and wife, Laura M. Cumming (she is now known as Laura A. Morris and is the Debtor in this Chapter 13 case) executed a note for $746,655.00 payable to Security State Bank and Trust, Fredericksburg, Texas (the "Bank") in monthly installments of $6,966.75 per month beginning January 13, 2001 [Exhibit M-1[4]]. The note provides for a fluctuating interest rate on a three year basis, so the amount of the monthly payments fluctuates accordingly. The note is secured by a Deed of Trust on 27.481 acres out of the Simon Freechild Survey No. 75, Abstract 153, Comal County, Texas described by metes and bounds [Exhibit M-2]. On page 6, the Deed of Trust recites that to the extent of $581,655.00 it is in renewal and extension of a mechanic's lien contract between the borrowers and Cumming Homes, Inc., and to the extent of $165,000.00 it is in renewal and extension of a vendor's lien on the property.

On May 9, 2001 the same parties executed a Second Lien Real Estate Note to the Bank for $24,000.00 payable at the rate of $208.60 per month [Exhibit M-3]. The interest rate on this note fluctuates similarly to the interest rate on the first lien note. The note is secured by a Deed of Trust on the 27.481 acre parcel of land [Exhibit M-4]. Testimony at the Confirmation Hearing showed that the purpose of the second lien note was to pay ad valorem taxes on the Property.

By a Release of Lien dated June 18, 2007, but acknowledged on January 6, 2011, the Bank released from the first lien, a 10.004 acre parcel of the 27.481 tract [Exhibit M-5]. [5]

On July 28, 2008, the same parties executed an Extension of Real Estate Note and Liens relating to the first lien note. The extension recited that the present unpaid balance was $583.636.63 which was to be paid in monthly installments of $5,962.79 [Exhibit M-7]. The monthly installments would fluctuate with changes in the interest rate. The extension recited that it was secured by the 27.481 acre tract and did not mention the release of the 10.004 acre parcel. The extension recites that the property is commonly known as "6500 Hwy 281 North, Spring Branch, TX 78070."

On August 5, 2009 Laura Morris Cumming (the Debtor) and Jeffrey Spence Cumming were divorced by judgment of the 274th Judicial District Court of Comal County, Texas [Exhibit M-8]. The divorce decree refers to two parcels of property, as follows:

1. "Real property located at 6450 US Highway 281 N., Spring Branch, Texas 78070, being 11.38 acre tract of land out of 27.481 acre tract recorded in doc #9906006496 of the official public records of Comal County, Texas in the Simon Freechild Survey no. 75, Abstract no. 153, Comal County, Texas. Court ORDERS this property to be listed for sale, sold, sales commission will be paid to CHI Real Estate in the amount of 3% of the

---

[4] The numbers on Bulverde's exhibits are preceded by the letter M. The numbers on the Debtor's exhibits are preceded by the letter D.
[5] There was no evidence of a release of the second lien on the 10.004 acre tract.

3

sales price, and all proceeds after paying off the mortgage debts, outstanding property taxes, closing costs and any outstanding debt connected with this property to be split 50/50 between Husband and Wife.

2. Real property located at 6500 US Highway 281 N., Spring Branch, TX 78070, being 6.165 acre tract of land out of 27.481 acre tract recorded in doc #9906006496 of the official public records of Comal County, Texas in the Simon Freechild Survey no. 75, Abstract no. 153, Comal County, Texas. Court ORDERS this property to be listed for sale, sold, sales commission will be paid to CHI Real Estate in the amount of 1% of the sales price and all proceeds after paying off the mortgage debts, outstanding property taxes, closing costs and any outstanding debt connected with this property to be split 50/50 between Husband and Wife. Any revenues made from a property lease, use agreement or previous lease settlement on this property prior to this date will be split 50/50 between Husband and Wife. The Wife is permitted to reside on and office out of this property until it's sold and will be responsible for the utilities used in the 1800 s.f. single story building on the property during this time of possession. The Husband is prohibited from entering this property without being invited and/or scheduled necessary visitation with notice for this will be the Wife's residence and place of business."

The decree also provides that the Wife (the Debtor) is to receive 15% of the Husband's USAF retirement until both of the properties are sold and until her "20 units in Light Records are sold and funded for at least $100,000." In her schedules, [Exhibit M-16] the Debtor lists "20 Shares – in Light Records, LLC" at no value. The only income listed on her schedule of current income is $5,742.75 from her business. There is no mention of her receiving money from her former husband's UASF retirement. Her schedule of assets lists "CHI Real Estate, Inc. (100% owner)" with a value of $390.00.

On December 29, 2010 the Bank placed hazard insurance policies on the Property because the Debtor apparently had not maintained insurance on the Property [Exhibit M-6][6].

The Property was posted for foreclosure sale on February 1, 2011. The Debtor filed this Chapter 13 case on January 11, 2011, effectively preventing the foreclosure sale.

On July 15, 2011, the Bank filed a motion to be relieved from the automatic stay so that it could foreclose on the Property [Docket No 59]. The motion stated that the principal amount due on Note #1 was $629,032.76 and on Note #2 was $15,932.80. After some preliminary hearings, the motion was denied because the Bank no longer owned the notes and liens [Docket No. 92].

On July 22, 2011, the Bank assigned the notes and liens of December 13, 2000 and May 9, 2001 on the 27.481 Acres, excepting the 10.004 acre tract that had been released, to Bulverde [Exhibit M-9].

---

[6] Bulverde's list of exhibits states that the date was December 30, 2007, but the documents in the exhibit are dated December 30, 2010.

4

Value of the Property: The Property consists of two parcels. One is an 11.381 acre parcel upon which a residence and a number of other buildings are located. The other is a 6.165 acre parcel upon which two commercial buildings are located. There is an easement across the 6.165 acre parcel for access to the other parcel [See the plat which is the last item in Exhibit D-1].

On March 2, 2009, the Debtor and her then husband executed a listing agreement with CHI Real Estate, Inc. (the Debtor's company) on the Property for $2,200,000 [Exhibit D-1]. On November 3, 2011, they executed an amendment lowering the price to $1,998,000 [Exhibit D-1]. Both listings contemplated the sale of the Property as a unit or in two parcels.

On her Schedule of Real Property, the Debtor listed property as jointly owned by husband and wife with a total value of $1,842.660 [Exhibit M-16]. During her testimony at hearing, the Debtor did not give any further indication of her opinion of the value of the property other than to say she planned to sell it and pay all of her creditors in full.

Darryl Petitt, a qualified appraiser, concluded that the Property has a market value of $2,500,000. His appraisal report [Exhibit D-8] contains a good description of the Property and the seven buildings located on it.

The Comal County Central Appraisal District shows the Property as having a fair market value of $1,669,500 [Exhibit D-7 and Mr. Petitt's appraisal report].

Wayne Lightfoot, a Real Estate Broker, did not present an appraisal report. He opined that he would recommend listing the property for sale at $525,000 for the commercial property and $698,000 for the residential property for a total price of $1,223,000.

Effective July 22, 2011 Bulverde insured the buildings on the Property for various risks with a value of $1,287,000 [Exhibit M-10]. Adding the value of the two large parcels of land would indicate that Bulverde values this Property at close to $1,700,000.

Claims:

Claim No. 1 filed by Ford Motor Credit Company is for $20,282.35 on a vehicle contract signed by the Debtor. Her plan proposes for her to make the regular contract monthly payments on this obligation directly to Ford Motor Credit Company.

Claim No. 2 filed by Department Stores National Bank/Macy's is for $128.31. The account is in the Debtor's name.

Claim No. 3 filed by Toyota Motor Credit Corporation is for $25,024.50. The Debtor has rejected this vehicle lease and states that she has returned the vehicle. On September 2, 2011 the Chapter 13 Trustee filed an objection to this claim [Docket No. 81].

Claim No. 4 filed by Comal County is for $78,123.27 for 2010 and estimated 2011 ad valorem taxes on the Property.

5

Claim No. 5 filed by Candica LLC is for $456.61 charges on a Capital One credit card. The account is in the Debtor's name.

Claim No. 6 filed by American Express Centurion Bank is for $ $46,782.64 for credit card charges. The account is in the Debtor's name.

Claim No. 7 filed by Barton and Nancy Dailey is for $117,229.12 against Jeffrey S. Cumming, Laura M. Cumming and Up & Cumming Ministries d/b/a Rivers of Life Church (the "Church"). This is the subject matter of Cause No. 2009-8-CI-10992 in the 73rd Judicial District Court of Travis County, Texas. A Notice of Lis Pendens has been filed against the Property because the Daileys are seeking the imposition of a lien on the Property. On April 12, 2011, the Debtor removed the state court suit to the Bankruptcy Court, where it is Adversary Proceeding 11-05052 [Docket No. 34]. By a stipulation filed in this case on July 21, 2001 [Docket No. 65], between the Debtor, Jeffrey S. Cumming and Church; Mr. Cumming and the Church agree to pay all amounts due to Mr. and Mrs. Dailey. They further agree that when the Property is sold, the Daileys will be paid out of Mr. Cumming's share of the sales proceeds directly by the title company closing the sale. The Daileys are not a party to the stipulation. On June 21, 2011 the court approved an agreement between the Debtor and the Daileys to extend to September 30, 2011 the time for the Daileys to file an objection to the dischargeability of their claim against the Debtor [Docket Nos. 49 and 52]. At the confirmation hearing, the Debtor's attorney and the Daileys' attorney announced an agreement to further extend that date because, if the Daileys are paid from a sale of the property, the matter of dischargeability is moot. The court approved the extension.

Claim No. 8 filed by Norman and Trayce Stone is for $80,992.28 against Cumming Homes, Inc. as a result of an August 25, 2009 Judgment of the 207th Judicial District Court of Comal County, Texas in cause No. C-2006-0850-B. On May 18, 2010 the Stones filed cause No. 2010 CI-08379 in the 57th Judicial District Court of Bexar County, Texas against Jefferey Spence Cumming and Laura Morris asserting that they disposed of the assets of Cumming Homes, Inc. in fraud of the Stones. On April 12, 2011, the Debtor removed the state court suit pending in Bexar County to the Bankruptcy Court, were it is Adversary Proceeding 11-05051 [Docket No. 33]. On June 21, 2011 the court approved an agreement between the Debtor and the Stones to extend to September 30, 2011 the time for the Stones to file an objection to the dischargeability of their claim against the Debtor [Docket Nos. 50 and 51]. At the confirmation hearing, the Debtor's attorney and the Stones' attorney announced an agreement to further extend that date because, if the Stones are paid from a sale of the property, the matter of dischargeability is moot. The court approved the extension.

Claim No. 9 was filed by Bulverde Security, LLC "as assignee and successor-in-interest to Security State Bank & Trust." The claim is secured by the above described liens on the Property. "As of August 11th, 2011, the claim equals $741,052.25 (which represents $644,965.56 in outstanding principal and post-petition interest in the amount of 96,086.69 but excludes attorneys fees and expenses to which Claimant is also entitled and which Claimant estimates to be in an amount in excess of $16,500.00 as of August 11th, 2011). In addition,

6

interest continues to accrue at the rate of $318.05 per day and attorneys fees and expenses also continue to accrue."

Other matters: At the Confirmation Hearing, the Debtor testified that she had shown the Property to numerous parties, but they had not been able to secure financing to purchase the Property.

Also at the confirmation hearing, the Debtor testified that on August 1, 20ll, she leased the house on the Property for 12 months at a rental of $3,000 per month. She stated that the rental for the first two months had been spent in repairs on the house but she hoped to save the rent payments to apply to the ad valorem taxes on the property. The Debtor uses a portion of one of the commercial buildings for her real estate office. She does not pay rent to herself.

The Objection to Confirmation filed by Bulverde [Docket No. 85] asserts that the Debtor's plan is not feasible and has not been proposed in good faith.

Confirmation standards: Section 1325 of the Bankruptcy Code provides that the court "shall" confirm the plan if the requirements of that section are met. The word "shall" is mandatory, so the court has limited discretion in confirming a plan. The requirements are set out in subdivision (a) of that section. The court will discuss those requirements.
  (1) "[T]he plan complies with the provisions of this chapter and with the other applicable provisions of this title." The objectors make no suggestion that the plan does not comply with these factors, so this requirement is met.
  (2) "[A]ny fee, charge, or amount required … to be paid before confirmation, has been paid." There is no indication that the Debtor has not paid the required fees, so this requirement has been met.
  (3) "[T]he plan has been proposed in good faith and not by any means forbidden by law." Bulverde asserts that the Plan has not been proposed in good faith, but it offered no evidence to support that assertion. Undoubtedly Bulverde would like to foreclose on the Property relating to its recently acquired notes, but the Plan gives the Debtor an opportunity to recover what equity there is in the Property for her benefit, rather than the benefit of Bulverde. The Plan and the Debtor's testimony clearly indicate that the Debtor is making a good faith effort to sell the Property and to pay her creditors (including Bulverde) in full. There is no evidence that the Plan has been proposed by any means forbidden by law. Thus this requirement has been satisfied.
  (4) "[T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." The Plan proposes to pay all of the Debtor's unsecured creditors in full. They would not receive more, and would probably receive less, in a Chapter 7. Thus this requirement has been satisfied.
  (5) "[W]ith respect to each allowed secured claim provided for by the plan" the statute offers three alternatives. The first is that the holder of the claim has accepted the plan. The Plan proposes direct payments to Ford Motor Credit Company to pay its claim in full. Ford has not objected to the Plan and is assumed to have agreed to the plan. Another alternative is to surrender the collateral to the creditor; this was done

7

with the vehicle leased from Toyota Motor Credit Company. The third alternative applies where the creditor has not accepted the plan. Bulverde has objected to the Plan. In that event, the plan "shall" be confirmed if (a) the holder of the claim retains its lien [the Plan does not seek to avoid Bulverde's lien] (b) if the case is dismissed or converted without completion, the creditor retains its lien [the Plan does not seek to extinguish Bulverde's lien in either of those events], and (c) "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim" The allowed amount of Bulverde's claim has not been established, but the Plan provides for its allowed claim to be paid in full from the proceeds of the sale of the Property. The items listed under "Value of the Property" above, and in particular the insurance Bulverde placed on the buildings, show that there is adequate protection of Bulverde's lien during the two year time the Debtor has to sell the property.
(6) "[T]he debtor will be able to make all payments under the plan and to comply with the plan." The Debtor, like many Americans today, finds herself in a difficult position in a "down" real estate market. However, she should be able to sell the Property in the two years allowed by the Plan and thus realize some equity in the Property for her creditors and herself.
(7) "[T]he action of the debtor in filing the petition was in good faith." The Debtor's testimony and the Plan convince the court that the Debtor filed the petition in good faith.
(8) This relates to domestic support obligations. There is no evidence that the Debtor is obligated on a domestic support obligation.
(9) "[T]he debtor has filed all applicable Federal, State, and local tax returns as required by section 1308". The Chapter 13 Trustee checks to see that all applicable tax returns have been filed. The Trustee has not reported to the court that the Debtor is delinquent in any tax returns. Thus this requirement has been satisfied.

Conclusion: The Debtor has met the requirements of Section 1325 of the Bankruptcy Code, so the Plan must be confirmed.

The court must construe the terms of the plan.
   a. The Plan provides that the Debtor must "sell the property within 24 months of the date of confirmation." The court finds that the time expires on the second year after confirmation at the end of the day on the date immediately before the date upon which the Plan was confirmed. If the date of expiration is a Saturday, Sunday, or Federal Holiday, the date of expiration is continued until the end of the next business day.
   b. The term "sale" means that the sale must be closed and the proceeds available for distribution.
   c. The sale price must at least be sufficient to pay the expenses of sale and closing (as mentioned herein), all ad valorem tax claims on the Property, all amounts claimed by Bulverde, and any other validly perfected liens on the Property.
   d. If the sale does not close as stated, then, without further order of this court, the automatic stay of Section 362 of the Bankruptcy Code will be relieved so that all

8

      ad valorem taxing authorities and holders of secured claims on the Property may proceed to foreclose on their collateral.
- e. All expenses of sale and closing shall first be deducted from the sale proceeds; provided, however, that no real estate commission shall be payable to the Debtor or to her real estate company.
- f. If the Debtor and any taxing authority cannot agree upon the amount owed to a taxing authority, the closing agent shall pay the principal of the tax claim to the taxing authority and shall escrow with the Clerk of this Court sufficient funds to satisfy the balance of the claim of the taxing authority. The parties shall file appropriate pleadings for the court to determine the amount due to the taxing authority.
- g. The court assumes that the ad valorem taxes for the year in which the sale is closed will be pro-rated to the date of sale and assumed by the purchaser, or that other appropriate provision for payment of the ad valorem taxes for the year of sale will be made.
- h. If the Debtor and Bulverde cannot agree on the allowed amount of Bulverde's claim, the closing agent shall pay to Bulverde the principal amount due on the notes held by Bulverde and Bulverde shall immediately release its liens on the Property in order that the transfer of title may take place. The closing agent shall escrow with the Clerk of this Court sufficient funds to satisfy the balance of Bulverde's claim. The parties shall file appropriate pleadings for the court to determine the amount due to Bulverde.
- i. If the Debtor disputes the amount claimed by any other creditor, the closing agent shall, with respect to such creditor, follow a procedure like the procedure outlined for the Bulverde claim. Any lien claim shall be released upon payment of the principal of the claim.
- j. The Supplemental Provision of the Plan seems to assume that the Property will be sold as one parcel. Testimony at the Confirmation Hearing indicated that the Property might be sold in parcels. The testimony indicated that the ad valorem taxes are assessed on the Property as a whole. If that is the case, and if a parcel of the Property is sold, the taxes on all of the Property would have to be satisfied from the sale of the parcel, unless the taxing authority agrees to a different handling of the matter. The ad valorem taxes are a lien superior to contractual liens.
- k. If the Property is sold in parcels and one parcel is to close before the other, the court hopes the parties can agree on a distribution of the funds from the first sale following the outline contained herein. If the parties cannot agree, they can return to the court for instructions.
- l. Nothing in these instructions shall prohibit the Debtor and affected parties from making a mutually acceptable agreement for a different handling of these matters. Such agreement should be in writing and available to the court and all creditors upon request.

    <u>Rented house</u>: At the Confirmation Hearing, the Debtor stated that she had rented the house on August 1, 2011, for one year at the rate of $3,000 per month. She stated that she wished to use the rental proceeds to pay the taxes on the Property, but that she had been forced to

use the rental proceeds for the first two months to make repairs to the property. This income was not contemplated when her Chapter 13 plan was proposed. The use of the rental proceeds to maintain the house and to pay the taxes on the Property would be a benefit to all creditors. The court therefore makes the following requirements with respect to the rent.

      A. The Debtor will be allowed to continue to collect the rents and to use portions of the rent for reasonable repairs and upkeep of the house.
      B. Within 15 days from the entry of this order, the Debtor shall furnish a complete statement of the receipts and disbursements with respect to the rent for the months of August, September and October 2011 to the Chapter 13 Trustee. The disbursements shall be supported by appropriate receipts. The report shall show the amount escrowed for the payment of 2011 taxes on the Property. A similar accounting shall be furnished to the Chapter 13 Trustee by the 15th of each succeeding month during the term of this lease or any additional leases or rental of the house or other portions of the Property.
      C. Within 15 days of the entry of this order, the Debtor shall furnish to the Chapter 13 Trustee the names and full contact information of the tenants on the property together with a copy of any lease or rental agreement signed by the tenants. Similar information shall be promptly furnished with respect to any future tenants on any portion of the Property.
      D. As soon as 2011 ad valorem taxes can be paid on the Property, the Debtor shall pay the escrowed funds to the taxing authority. A copy of the receipt from the taxing authority for those funds shall accompany the Debtor's monthly report to the Chapter 13 Trustee. Each month thereafter, the Debtor shall pay all available funds on the 2011 ad valorem taxes and furnish a copy of the receipt to the Chapter 13 Trustee along with the monthly accounting.
      E. If the ad valorem taxing authority will not accept partial payments, the Debtor shall place the escrowed tax funds in a separate bank account titled for that purpose and furnish the Chapter 13 Trustee with evidences of deposits into that account. Payment of taxes from that account should be made at such times and in such amounts as are acceptable to the ad valorem taxing authorities.
      F. Like procedures must be followed with respect to any other structure or structures on the Property that are rented prior to the sale of the Property.

The court will enter an order in accordance with this memorandum.

##########